## UNIVERSAL DRAFT GEAR ATTACHMENT CO. v. BUSH.

(Circuit Court of Appeals, Seventh Circuit. October 6, 1914.)

### No. 2099.

PATENTS ⬡⟶328—ANTICIPATION—DRAFT GEARING.

The Bush patent, No. 838,379, for a draft gearing, claim 1, which is a broad claim covering a yoke for draft gearing in combination with any means for attachment to a coupler designed to form a portion of the car coupler in railway service, *held* void for anticipation in the prior art.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Suit in equity by Samuel P. Bush against the Universal Draft Gear Attachment Company. Decree for complainant, and defendant appeals. Reversed.

The appellant is defendant below to a bill filed by Samuel P. Bush, patentee, for infringement of his patent No. 838,379, issued December 11, 1906, for draft gearing, and this appeal is from a decree of the District Court which sustains the charges of infringement.

The patent in suit contains the following recitals in the specifications:

"My invention relates to improvements in draft gearing, the object of the invention being to so construct the draft yoke as to enable the coupler to be inserted and withdrawn without disturbing the other parts of the draft gearing; and the invention consists in certain novel features of construction and combinations and arrangements of parts, as will be more fully hereinafter described, and pointed out in the claims. In the accompanying drawings, Fig. 1 is a view in side elevation, illustrating my improvements. Fig. 2 is a view in cross-section on the line *x x* thereof, and Figs. 3, 4, 5, and 6 are views illustrating a modification.

"*1* represents the drawbar of a coupler, having an enlarged oblong butt end *2*, as is customary. *3* represents my improved draft yoke, which comprises a single integral casting having parallel top and bottom members connected by a curved rear end and provided with a hood *4* at its forward or outer end. This hood is of the same shape in cross-section as the butt end of the coupler to receive the latter, and the hood *4* and butt end of the coupler are made with aligned openings to receive a key *5* to secure the coupler to the yoke. By this construction it will be observed that the coupler can be removed and replaced without in any manner disturbing the draft gearing on the car, as the forward follower or friction piece will engage the yoke hood when the coupler is removed, and thereby prevent any separation of the operative or movable parts of the draft gearing.

"In the modification illustrated in Figs. 3, 4, 5, and 6, the hood *6* at the forward end of the yoke is of circular or cylindrical form and made with internal oppositely disposed lugs *7*. The butt end of the coupler is provided at top and bottom, adjacent to its enlarged rear end, with lugs or enlargements *8*, forming grooves or recesses *9* to receive the lugs *7* of the yoke and secure the parts together. To secure the coupler in the yoke, the coupler is turned on its side and its butt end inserted in the hood *6* of the yoke, and then turned to bring its grooves or recesses *9* at top and bottom over the lugs *7* and receive the latter in the grooves or recesses to secure the coupler and yoke together without the employment of any third part.

"Slight changes might be made in the general form and arrangement of the parts described without departing from my invention, and hence I do not restrict myself to the precise details set forth, but consider myself at liberty

to make such slight changes and alterations as fairly fall within the spirit and scope of my invention."

The main drawings, referred to as Figs. 1, 2, and 3, are as follows:

The specifications embrace three claims, but the alleged infringement rests on broad claim 1, which reads as follows:

"A yoke for draft gearing, comprising top and bottom members, rear end, and hooded forward end constructed to receive a coupler, and all cast integral, and means for securing a coupler in the hooded end of the yoke."

The answer of the defendant denies the validity of the patent and sets up the following patents alleged to be anticipations of the device in suit: Jackson, No. 37,448, January 20, 1863; Griffith & Patterson, No. 167,333; Wallace, No. 269,358; Schaffer, No. 303,-951; Buhoup, No. 423,727; Westbrook & Cook, No. 457,468; Martin, No. 721,-059; Hickey & Wickens, No. 777,785; Pflager, No. 779,559; Brown, No. 781,-127; Hartough, No. 785,211; and Willison, No. 1,000,312.

The contentions of invalidity are set forth on behalf of the appellant in the following propositions:

"(a) That it merely applies to the yoke or loop form of coupler extension, the form of construction long since used in the tail bolt and casing type, and without securing any new function or mode of action; (b) that it seeks to monopolize the making of a yoke in one piece which has been made in two pieces, without securing any new function or mode of action; (c) that it seeks to monopolize the use of cast metal, where wrought metal had been previously used, with no new function or mode of action; (d) that the claim of the patent is readable directly on various prior art structures, which, had they been later than the patent, would have infringed it; (e) that it seeks to monopolize a structure which is a mere reversal of several earlier structures."

Louis K. Gillson, of Chicago, Ill., for appellant.

H. A. Seymour, of Washington, D. C., for appellee.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The decree against the appellant, defendant below, adjudges infringement of the Bush patent, No. 838,379, issued December 11, 1906, for "improvements in draft gearing," and the charge of infringement is predicated on the first of the three claims specified for the grant, reading as follows:

"1. A yoke for draft gearing, comprising top and bottom members, rear end, and hooded forward end, constructed to receive a coupler, and all cast integral, and means for securing a coupler in the hooded end of the yoke."

In the specifications it is stated as the object of the invention, "to so construct the draft yoke as to enable the coupler to be inserted and withdrawn without disturbing the other parts of the draft gearing," and that "the invention consists in certain novel features of construction and combinations and arrangements of parts," as thereinafter de-

scribed. It thus appears that the above claim embraces alone the structure of the so-called "yoke for draft gearing," in combination with any means for attachment to a coupler, designed to form a portion of the car coupler in railway service, wherein the entire mechanism for the purpose is known as "draft rigging." As an entirety the draft rigging serves both as a car coupler and as a needful means "to sustain and absorb pulling and buffing strains" in train service, so that it embraces the clutching means or "coupler," so-called "draft lugs" for attachment to the sills of the car, and "draft gear" as the shock absorbing means. In practice the coupler contains three elements: (a) The head or clutching device, (b) a tail piece or coupler extension means for connection with the draft gear; and (c) a shank connecting the head and tail pieces; and the device of the Bush patent is limited to this intermediate means for connection of the coupler head and draft gear.

The fact is uncontroverted that the appellant's structure for like purpose is within the above-stated terms of claim 1 for the "yoke for draft gearing," as described—although it departs from the form of "hooded" end shown in the drawings—and the validity of such broad claim of invention is challenged as the sole ground for reversal of the decree. As indicated by the foregoing definitions of the various components of the car coupler, the problems of the shock absorbing draft gear, appearing in the devices in evidence of either spring or friction type, are not involved in the issue of patentable novelty in this yoke form, beyond the fact of its adaptability to receive (through the open sides) either of the forms of draft gear. In favor of patentability are not only the presumption arising from the grant, but the proof of simplicity and effectiveness of this yoke form of means for the purpose, together with popular acceptance of the device in railway service. On the other hand, however, it is conceded in the appellee's brief, that "two types of draft rigging, the tail bolt and the *riveted* yoke were in extensive use prior to the date" of the patent, and the prior patents and exhibits in evidence are conclusive as well that no invention was involved in employing the yoke form of operative means for the purpose of the device. So, for support of claim 1, invention must be found in one or both elements described as (a) the "hooded forward end" and (b) "all cast integral"—the means specified for "securing a coupler in the hooded end" not being embraced in such claim, but made the subject-matter of claims 2 and 3. Its terms are equally applicable to the key and (alternative) bayonet joint specified, or to pins, rivets, or other known means for securing the coupler within the hood or clutch. This distinction between claim 1 and the other claims appears to be ignored in the statement, made in the appellee's brief, that "the gist and essence of the improvement which is pointed out in the first claim sued upon, is a draft yoke having upper and lower members, rear end, and hooded forward end all cast in a single piece, and a key readily securing the coupler," etc.; but, excluding the irrelevant mention of the key and its function, the utmost range for exercise of invention within claim 1 is there stated.

The patents introduced in evidence as anticipations of this claim are 12 in number, exhibiting three several types of means, classified

in the briefs as (a) tail bolt, (b) shell or casing, and (c) yoke or tail strap; also several exhibit yoke devices are introduced from the "Car Builders' Dictionary of 1895." On behalf of the appellant, these disclosures of the prior art are analyzed as clearly responding to the terms of claim 1, "either directly or with immaterial deviations," while it is contended in support of the claim that no disclosure thereof appears in any one of them. Their indisputable evidence, however, of want of invention in the yoke form of means renders it unnecessary to discuss the respective contentions in reference to the various means and their functions shown in these prior patents and devices, nor the appellee's contention that devices of the casing type (four-sided) are not applicable to his two-sided yoke form of means, although used in this art as an equivalent. We believe the prior patents clearly serve to narrow the scope of invention to the particular combination of means specified, as an entirety, as that claim 1 cannot be upheld under these pertinent references. Jackson's U. S. patent No. 37,448; Buhop's No. 423,727; Martin's No. 721,059; Hickey & Wickens' No. 777,785; Brown's No. 781,127; Hartough's No. 785,211; Willison's No. 1,000,-312 (filed April 27, 1905).

With the object of the Bush invention (as specified) "to enable the coupler to be inserted and withdrawn without disturbing the other parts," it goes without saying that the means of securing the coupler are of the essence of the device. The element called the "hooded forward end" of the yoke is formed by the addition of side plates, making a casing at the open end of the yoke, both to inclose the coupler head and for needful strength of the yoke. Upon selection of the yoke type of structure instead of the tail bolt or casing type, this provision to receive the coupler impresses us to be an obvious mechanical expedient, but it is plainly anticipated by analogous disclosures in the above-mentioned patents; and each prior patent in evidence exhibits analogous means for detachable connection of the coupler with the draft gear. For particular patent references above mentioned we believe the following comments thereon to be sufficient: It is our understanding of the Hickey & Wickens patent that it directly anticipates every element of claim 1 in structure and function, except that it is not "all cast integral," but shows a two-part structure united by rivets. As conceded by the patentee, as a witness, it could obviously have been cast in one piece without riveting. Other distinctions are asserted, for rejection of this patent, in two phases—that the device is correctly described throughout the specifications as a "coupler shank" (although it embraces a yoke), and that it appears of insufficient strength for durability; but neither of these objections impresses us with force. The Martin patent exhibits a cylindrical device of the casing type, having an opening at the bottom (closed with a slide) to receive the draft gear. It is substantially identical with the alternative structure of the Bush patent (shown in Fig. 3), and thus must be treated as an anticipation of claim 1. In the patents respectively of Buhop, Brown, and Williston analogous structures and functions are plainly shown and each cast integral. We believe a structure made in conformity with any of the above-mentioned patents would have infringed the terms of claim 1, if subordinate in grant.

The undoubted merit of the Bush improvement as an entirety, for compactness and utility, cannot serve to authorize monopoly, either of the yoke and "hooded" means adopted from the prior art, or of a cast steel structure therefor. Just protection of the patentee cannot extend to the creation of an unauthorized monopoly against the public. In answer to the contention of patentable invention in this cast steel feature, aside from the anticipations referred to, it is sufficient to cite the recent opinion of this court in Milwaukee Bronze Casting Co. v. Avery, 209 Fed. 616, 618, 126 C. C. A. 572, and cases noted, for the settled rule contra. Its departure from prior devices is further alleged, in provision for interchangeable use with the various sizes of standard couplers in service. Such requirement, however, is a development in practice since the date of all the patents in evidence, and plainly not within this patentee's contemplation, as his alternative form of structure (above mentioned) would not permit such interchangeability; and, conceding that his preferred form may readily be so adapted, like adaptation is equally attainable within the scope of various prior patents in evidence.

The decree of the District Court is therefore reversed, with direction to dismiss the appellee's bill for want of equity.